UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| DEREK LUCAS | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 16-2309-JDT-cgc |
| | ) | |
| J.C. HOLLAND, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

ORDER DENYING PENDING MOTIONS, DISMISSING COMPLAINT,
CERTIFYING AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH
AND NOTIFYING PLAINTIFF OF APPELLATE FILING FEE

On May 5, 2016, Plaintiff Derek Lucas ("Lucas"), who is currently incarcerated at the U.S. Penitentiary McCreary in Pine Knot, Kentucky ("USP McCreary"), filed a *pro se* complaint pursuant to *Bivens*[1] and 42 U.S.C. § 1983 accompanied by a motion to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) In an order issued May 12, 2016, the Court granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 5.) The Clerk shall record the defendants as USP McCreary Warden J.C. Holland; Phillip Thompson; Christopher Rogers, an Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"); ATF Agent Brent Beavers; Assistant U.S. Attorney David Pritchard; Assistant U.S. Attorney Jerry Kitchen;

---

[1] Because Lucas's claims concern the actions of persons and entities acting under color of federal law rather than state law, any constitutional claims arise under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1974), instead of 42 U.S.C. § 1983. The Clerk is directed to MODIFY the docket to reflect this is *Bivens* action.

Assistant U.S. Attorney Daniel T. French; U.S. Magistrate Judge Charmaine Claxton; U.S. Magistrate Judge Diane Vescovo; U.S. District Judge S. Thomas Anderson;[2] appointed trial counsel Steffen Schreiner; former U.S. Probation Officer Alice Conley; Court Reporter Mark Dodson; and Court Reporter Kristi Heasley.

## I. The Complaint

On April 24, 2012, a federal grand jury in this district issued a superseding indictment against Lucas and four co-defendants. *See United States v. Dowdy, et al.*, No. 11-20032-STA (W.D. Tenn.) (Crim. ECF No. 151). Lucas was charged only in Counts One and Two. Count One of the indictment charged Lucas with conspiracy to possess cocaine with intent to distribute and Count Two charged him with possession of firearms in furtherance of a drug trafficking crime. *Id.* On July 13, 2012, Lucas was convicted by a jury on both counts. *Id.* (Crim. ECF No. 206). He was sentenced on October 31, 2012, to a term of life in prison, *id.* (Crim. ECF No. 251), and the Sixth Circuit affirmed, *see United States v. Lucas*, 542 F. App'x 510 (6th Cir. 2013). Lucas subsequently filed a motion pursuant to 28 U.S.C. § 2255, which was denied. *See Lucas v. United States*, No. 14-2324-STA-cgc (W.D. Tenn. July 1 2015). Lucas did not appeal that denial.

Lucas's complaint in this case is largely an attempt to retry his criminal case, and it is difficult to decipher the actual allegations because many are incomprehensible. He alleges that his indictment for "conspiracy to distribute ten kilos in furtherance of trafficking crime" was invalid because the extra storage space where the crime was committed was not within the exclusive jurisdiction of the United States and the offenses charged were not against the laws of the United States or within the jurisdiction of the Court. (ECF No. 1 at 3.)

---

[2] Lucas incorrectly identifies Judge S. Thomas Anderson as a Bankruptcy Judge. The Clerk is directed to MODIFY the docket to reflect Judge Anderson's proper title.

Lucas alleges that from February 1, 2011 through November 5, 2012, Defendants Thompson, Rogers, Beavers, Claxton, Vescovo, Anderson, Pritchard, French, Kitchen, Conley, Schreiner, Dodson and Heasley were part of a conspiracy "to oppress the enjoyment of plaintiff's right to enumeration [sic]." (*Id.* at 3.) Lucas also alleges that on February 8, 2011, he was deprived of bail because Defendant Thompson stated he feared for his life even though Thompson did not provide any evidence of a threat. (*Id.* at 4.) He further alleges that the conspiracy to oppress him originated with Defendant Thompson's idea to trade his confinement for Lucas's liberty and was set in motion by Defendant Rogers, who was Thompson's handler. (*Id.*) Lucas contends that a "sting operation" that led to the conspiracy to oppress Lucas's rights. (*Id.*)

Lucas also alleges that the unfair criminal trial before Defendant Anderson from July 9, 2012 through July 15, 2012, violated his rights where Lucas was tried for offenses that were not against the laws of the United States or the jurisdiction of the District Court, and where the two jurors who "verbally showed consciousness of Constitutional Rights" were immediately stricken. (*Id.* at 5.) He alleges he was deprived of a fair jury trial, a speedy trial, and effective counsel and that he was deprived of the right to confrontation because the United States is not a legal person so there was no victim to confront. (*Id.*) He states "the nature of the crime was hidden from plaintiff, and was not within the exclusive jurisdiction of the United States," so the District Court had no jurisdiction. (*Id.*) Lucas alleges that his right to a jury trial was denied because a jury of his peers could not be produced and because the two jurors mentioned *supra* were removed. (*Id.* at 6.) In addition, he allegedly was deprived of the assistance of counsel due to a conflict of interest on the part of Defendant Schreiner, who failed to raise the issue of entrapment or argue that Lucas was a foreigner to the language. (*Id.*)

The complaint continues in this vein, much of it repetitive and incoherent. Lucas's last allegation is that his body and DNA are sacred and, as such, mandatory tuberculosis tests by prison officials contaminate his body. (*Id.* at 9.) He allegedly is forced to endure work assignment for pennies a day, not even minimum wage, with the penalty for not complying being placement in solitary confinement with only one hour out of his cell per day due to his conviction. (*Id.*)

Lucas seeks a preliminary and permanent injunction ordering Defendant Holland to grant Lucas a religion exemption from mandatory tuberculous skin test as well as compensatory and punitive damages from each named Defendant. (*Id.* at 3.)

II. Analysis

A. Screening and Standard

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

> (1)  is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2)  seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); see also 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the court applies standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*,

631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more than conclusions . . . are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally. Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325, 328-29 (1989)).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give "judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327, 109 S. Ct. 1827 (interpreting 28 U.S.C. § 1915). Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, *Iqbal*, 129 S. Ct. at 1949-50, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness. *Neitzke*, 490 U.S. at 327-28, 109 S. Ct. 1827.

*Id.* at 471.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants and prisoners are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, No. 09-2259, 2011 WL

285251, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)) (alteration in original); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

B.  *Bivens* Claim

*Bivens* provides a right of action against federal employees who violate an individual's rights under the United States Constitution. "Under the *Bivens* line of cases, the Supreme Court has recognized a cause of action against federal officials for certain constitutional violations when there are no alternative processes to protect the interests of the plaintiff and no special factors counseling against recognizing the cause of action." *Koubriti v. Convertino*, 593 F.3d 459, 466 (6th Cir. 2010).`

Any claims against Defendant Warden J.C. Holland appear to be based solely on his position as the Warden of USP McCreary. Under both 42 U.S.C. § 1983 and *Bivens*,

"[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. at 676; *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own official actions, violated the Constitution." *Iqbal*, 556 U.S. at 676.

> There must be a showing that the supervisor encouraged the specific instance of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

*Bellamy*, 729 F.2d at 421 (citation omitted). A supervisory official, who is aware of the unconstitutional conduct of his subordinates, but fails to act, generally cannot be held liable in his individual capacity. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 727-28 (6th Cir. 1996). The complaint does not allege that Defendant Holland, through his own actions, violated Lucas's constitutional rights.

Lucas cannot sue Defendants Pritchard, Kitchen, and French for money damages arising from their institution and prosecution of the criminal proceedings against him. Prosecutors are absolutely immune from suit for actions taken in initiating and pursuing criminal prosecutions because that conduct is "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976). "A prosecutor's decision to initiate a prosecution, including the decision to file a criminal complaint or seek an arrest warrant, is protected by absolute immunity." *Howell v. Sanders*, 668 F.3d 344, 351 (6th Cir. 2012). Lucas's claim for money damages against Defendants Pritchard, Kitchen, and French for these

activities is barred by absolute prosecutorial immunity. *Id.* at 427-28; *Burns v. Reed*, 500 U.S. 478, 490-492 (1991); *Grant v. Hollenbach*, 870 F.2d 1135, 1137 (6th Cir. 1989); *Jones v. Shankland*, 800 F.2d 77, 80 (6th Cir. 1986). Therefore, they cannot be sued for malicious prosecution. *O'Neal v. O'Neal*, 23 F. App'x 368, 370 (6th Cir. 2001); *see also Spurlock v. Thompson*, 330 F.3d 791, 797 (6th Cir. 2004) (noting that "prosecutors are absolutely immune from many malicious prosecution claims"); *Roybal v. State of Tenn. Dist. Attorney's Office*, 84 F. App'x 589 (6th Cir. 2003).

Lucas also has no claim against Defendant Schreiner because he did not act under color of federal law. Courts have uniformly held that defense attorneys are not state or federal actors who can be sued under § 1983 or *Bivens*. *See Polk County v. Dodson*, 454 U.S. 312, 325 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."); *Mulligan v. Schlachter*, 389 F.2d 231, 233 (6th Cir. 1968) (private attorney who is appointed by the court does not act under color of state law); *Pagani-Gallego v. Escobedo*, No. 97-1640, 1998 WL 381562, at *1 (6th Cir. June 23, 1998) ("[A]n attorney is not transformed into a federal official for purposes of a *Bivens* action merely because he is appointed by a federal court pursuant to federal law."); *Haley v. Walker*, 751 F.2d 284, 285 (8th Cir. 1984) (per curiam) (same).

Likewise, Lucas has no claims against Defendants Claxton, Vescovo, and Anderson. It is well settled that judges, in the performance of their judicial functions, are absolutely immune from civil liability. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991); *Stump v. Sparkman*, 435 U.S. 349, 363 (1978); *Bright v. Gallia Cnty., Ohio,* 753 F.3d 639, 648-49 (6th Cir. 2014); *Leech v. DeWeese,* 689 F.3d 538, 542 (6th Cir. 2012). Whether a judge or other official is entitled to absolute immunity in a given case turns on a "functional" analysis. *Harlow v. Fitzgerald*, 457

U.S. 800, 810-11 (1982). The "touchstone" for applicability of absolute judicial immunity is "performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435-36 (1993). Any actions taken by Defendants Claxton, Vescovo, and Anderson during the course of the criminal proceedings, such as making rulings and issuing orders and judgments, clearly are within in the scope of their judicial function; therefore, Lucas's claims against Defendants Claxton, Vescovo, and Anderson are barred by judicial immunity.

Defendant Thompson is a private citizen. Lucas makes no allegations that he is employed by the government. Generally to be considered to have acted "under color of state law," the person must be a state or local government official or employee. A private party may be found to have acted under color of state law to establish the first element of this cause of action only when the party "acted together with or . . . obtained significant aid from state officials" and did so to such a degree that its actions may properly be characterized as "state action." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). An individual may also be considered a state actor if he or she exercises powers traditionally reserved to a state. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352 (1974). While Lucas does allege that Thompson was a confidential informant, the allegations in the complaint are not sufficiently plausible to suggest that Thompson conspired with the government Defendants to violate Lucas's rights.

The bulk of Lucas's claims against the Defendants are time barred. The one-year statute of limitations period of Tennessee Code Annotated § 28-3-104(a) is applicable to *Bivens* actions brought in Tennessee. *Mason v. Dep't of Justice*, 39 F. App'x 205, 207 (6th Cir. 2002); *see also Merriweather v. City of Memphis*, 107 F.3d 396, 398 n.1 (6th Cir. 1997) ("In federal constitutional tort actions, the court borrows the statute of limitations for personal torts from the

state where the claim arose—here, Tennessee."). Lucas's allegations of constitutional violations largely arise out of the subsequent criminal proceeding which concluded, at the very latest, on February 18, 2014, the expiration of the time for filing a petition for certiorari from the Sixth Circuit's November 13, 2013, affirmance on direct appeal. The present case was filed more than two years later, on May 5, 2016. Therefore, all of Lucas's claims arising out of the conduct of the criminal proceeding itself are untimely.

With regard to Lucas's claims for false arrest or false imprisonment, the Supreme Court's decision in *Wallace v. Kato*, 549 U.S. 384, 391-92, 397 (2007), makes clear that a claim for false arrest or false imprisonment accrues at the time of arrest or, at the latest, when detention without legal process ends.[3]

The Sixth Circuit has held that a Fourth Amendment claim based on an allegedly unlawful arrest accrues at the time of arrest. *Fox v. DeSoto*, 489 F.3d 227, 233, 235 (6th Cir.

---

[3] The Supreme Court explained:

> Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process-when, for example, he is bound over by a magistrate or arraigned on charges. . . . Thereafter, unlawful detention forms part of the damages for the "entirely distinct" tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process. . . . "If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more. From that point on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself." . . . . Thus, petitioner's contention that his false imprisonment ended upon his release from custody, after the State dropped the charges against him, must be rejected. It ended much earlier, when legal process was instituted against him, and the statute [of limitations] would have begun to run from that date.

*Id.* at 389-90 (emphasis in original; footnote and citations omitted); *see also id.* at 390 n.3 ("This is not to say, of course, that petitioner could not have filed suit immediately upon his false arrest. While the statute of limitations did not begin to run until petitioner became detained pursuant to legal process, he was injured and suffered damages at the moment of his arrest, and was entitled to bring suit at that time.").

2007). The original indictment in the criminal case was issued on February 8, 2011. Lucas filed the complaint more than five years later; therefore, the false arrest and false imprisonment claims also are time barred.

The complaint does not state a valid malicious prosecution claim against any Defendant. The Sixth Circuit "recognize[s] a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment," which "encompasses wrongful investigation, prosecution, conviction, and incarceration." *Barnes v. Wright*, 449 F.3d 709, 715-16 (6th Cir. 2006) (internal quotation marks omitted). The "tort of malicious prosecution" is "entirely distinct" from that of false arrest, as the malicious-prosecution tort "remedies detention accompanied not by absence of legal process, but by wrongful institution of legal process." *Wallace*, 549 U.S. at 390 (2007) (internal quotation marks omitted).

> To succeed on a malicious-prosecution claim under § 1983 when the claim is premised on a violation of the Fourth Amendment, a plaintiff must prove the following: First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant "ma[d]e, influence[d], or participate[d] in the decision to prosecute." *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007); *see also McKinley v. City of Mansfield*, 404 F. 3d 418, 444 (6th Cir. 2005); *Darrah v. City of Oak Park*, 255 F.3d 301, 312 (6th Cir. 2001); *Skousen v. Brighton High Sch.*, 305 F.3d 520, 529 (6th Cir. 2002). Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution, *Fox*, 489 F.3d at 237; *Voyticky*, 412 F.3d at 675. Third, the plaintiff must show that, "as a consequence of a legal proceeding," the plaintiff suffered a "deprivation of liberty," as understood in our Fourth Amendment jurisprudence, apart from the initial seizure. *Johnson v. Knorr*, 477 F.3d 75, 81 (3d Cir. 2007); *see Gregory v. City of Louisville*, 444 F.3d 725, 748-50 (6th Cir. 2006) (discussing the scope of "Fourth Amendment protections . . . beyond an initial seizure," including "continued detention without probable cause"); *cf. Heck v. Humphrey*, 512 U.S. 477, 484, 114 S. Ct. 2364, 129 L.Ed.2d 383 (1994) ("[U]nlike the related cause of action for false arrest or imprisonment, [an action for malicious prosecution] permits damages for confinement imposed pursuant to legal process."). Fourth, the criminal proceeding must have been resolved in the plaintiff's favor. *Heck*, 512 U.S. at 484, 114 S. Ct. 2364 ("One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused.").

11

*Sykes v. Anderson*, 625 F. 3d 294, 308-09 (6th Cir. 2010) (footnote omitted).

The fact that Lucas was indicted by a grand jury shows the existence of probable cause for the charges. "[T]he finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer." *Higgason v. Stephens*, 288 F. 3d 868, 877 (6th Cir. 2002) (quoting *Ex parte United States*, 287 U.S. 241, 250 (1932)). In light of the grand jury indictments, any malicious prosecution claim fails because Lucas cannot show the absence of probable cause. Furthermore, the criminal proceedings were not resolved in Lucas's favor.

Finally, any claims arising from Lucas's conviction are barred by *Heck v. Humphrey*, in which the Supreme Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

512 U.S. 477, 486-87 (1994)(footnotes omitted). *See also Schilling v. White*, 58 F.3d 1081, 1086 (6th Cir. 1995) (same) (footnotes omitted). "*Heck*'s litigation bar applies with equal force to *Bivens* actions." *Baranski v. Fifteen Unknown Agents of Bureau of Alchohol, Tobacco & Firearms*, 452 F.3d 433, 460 (6th Cir. 2006) (citing *Robinson v. Jones*, 142 F.3d 905, 906-07 (6th Cir. 1998)). Therefore, Lucas has no cause of action under *Bivens* if the claims in that action hinge on factual proof that would call into question the validity of a state court order

directing his confinement unless and until any prosecution is terminated in his favor, his conviction is set aside, or the confinement is declared illegal. *Heck*, 512 U.S. at 481-82; *Schilling*, 58 F.3d at 1086. *Cf. Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) (whenever the relief sought is release from prison, the only remedy is through a habeas petition, not a civil complaint for damages). None of those events has occurred in this case.

Lucas does not sufficiently allege a claim for civil conspiracy. As the Sixth Circuit Court of Appeals has explained:

> In *Spadafore v. Gardner*, 330 F.3d 849 (6th Cir. 2003), we stated the standard governing a § 1983 conspiracy claim:
>
>> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.
>
> 330 F.3d at 854 (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). Although circumstantial evidence may prove a conspiracy, "[i]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Id.* (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)); *accord Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004). That pleading standard is "relatively strict." *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008).

*Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011). The same standard applies to conpiracy claims brought under *Bivens*. *See Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014). An assertion, unaccompanied by supporting facts, that parties conspired with each other is a legal conclusion that a court need not accept as true. *Id.* at 563-64 (collecting cases). Allegations of "a plan or agreement to violate [the plaintiff's] constitutional rights" is

13

required. *Id.* at 564. Lucas's allegations that Defendants conspired with each other are entirely devoid of supporting facts.

For all of the foregoing reasons, Lucas's complaint is dismissed in its entirety for failure to state a claim upon which relief can be granted. Lucas's motion to serve process (ECF No. 6) and his motion for appointment of counsel (ECF No. 3) are DENIED as moot.

### III. Standard for Leave to Amend

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, No. 12-1403, 2013 WL 646489, at *1 (1st Cir. Feb. 22, 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Brown*, 2013 WL 646489, at *1; *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) ("*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile"); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, the Court concludes that leave to amend is not warranted.

IV. Conclusion

The Court DISMISSES Lucas's complaint as to the Defendants for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b(1). Leave to amend is DENIED.

Pursuant to 28 U.S.C. §1915(a)(3), the Court must also consider whether an appeal by Plaintiff in this case would be taken in good faith. The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The test for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any issue that is not frivolous. *Id.* It would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the Defendants, but has sufficient merit to support an appeal *in forma pauperis*. *See Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith. Therefore, it is CERTIFIED, pursuant to 28 U.S.C. §1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith.

The Court must also address the assessment of the $505 appellate filing fee if Plaintiff nevertheless appeals the dismissal of this case. A certification that an appeal is not taken in good faith does not affect an indigent prisoner plaintiff's ability to take advantage of the installment procedures contained in § 1915(b). *See McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997), *partially overruled on other grounds by LaFountain*, 716 F.3d at 951. *McGore* sets out specific procedures for implementing the PLRA, 28 U.S.C. § 1915(a)-(b). Therefore, the Plaintiff is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in *McGore* and § 1915(a)(2)

by filing an updated *in forma pauperis* affidavit and a current, certified copy of his inmate trust account for the six months immediately preceding the filing of the notice of appeal.

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by Plaintiff, this is the second dismissal[4] of one of his cases as frivolous or for failure to state a claim. This "strike" shall take effect when judgment is entered. *Coleman v. Tollefson*, 135 S. Ct. 1759, 1763-64 (2015).

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

  s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

---

[4] *See Lucas v. Pritchard*, No. 12-2281-JDT-dkv (W.D. Tenn. July 10, 2013) (dismissed for failure to state a claim).